**CITY OF HOUSTON, Appellant,**

v.

**R. W. WALKER, Appellee.**

No. 17788.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1981.

Rehearing Denied March 12, 1981.

Dale M. Tingleaf, Sr. Asst. City Atty., Adolph R. Guerra, Jr., Asst. City Atty., Houston, for appellant.

Kirklin, Boudreaux & Joseph, Charles B. Kirklin, Houston, for appellee.

Before COLEMAN, C. J., and PEDEN and SMITH, JJ.

COLEMAN, Chief Justice.

This is a suit for damages arising under Title 42, § 1983, United States Code. Judgment was entered on a jury verdict for both actual and exemplary damages.

In 1972, appellee purchased lots 211 and 212 in block 7 of Colonial Gardens, an addition in Harris County, according to the map or plat thereof recorded in Volume 13, Page 4 of the Map Records of Harris County, Texas from Howard H. Maughn and wife, Lurline M. Maughn. The deed provided that the conveyance was made subject to the restrictions, conditions, easements and covenants, if any, applicable to and enforceable against the above described property as reflected in the records of the County Clerk of Harris County, Texas. Mr. Walker purchased this land as a building site for a commercial building and had already made arrangements for the sale of the lots together with the building to be erected thereon.

Mr. Walker owned some 86% of the stock of a corporation through which he engaged in construction of metal buildings. This corporation submitted plans and specifications to the City's Planning Commission for the commercial building to be erected on the lots which he had just purchased. The corporation was granted a permit and proceeded to prepare the lots for construction. The Corporation was in the process of preparing the foundation when served with a "stop order" on January 22, 1972.

Article 974a–2, V.A.T.S., provides in § 3(a), thereof that a person who desires a commercial building permit shall file with his application a certified copy of any instrument which contains a restriction on the use of or construction on the property described in the application, together with a certified copy of any amendment, judgment or other document effecting the use of the property. Paragraph (b) of Section 3 provides that when an applicant has complied with this act and local ordinances relating to commercial building permits, the department shall issue a permit for construction or repair which conforms with all restrictions relating to the use of the property described in the application. Section 5(c) provides that any commercial permit obtained without full compliance with the Act is void. Section 7 of the Act provides that an administrative refusal to issue a commercial permit on the grounds of violation of restrictions contained in a deed or other instrument shall be reviewable by a court of appropriate jurisdiction and that in the event of changed conditions within a subdivision or any other legally sufficient

reason that restrictions should be modified, a person refused a commercial building permit can petition a court of appropriate jurisdiction to alter the restrictions to better conform with present conditions.

Section 10–3 of Article 1, Chapter 10, of the Code of Ordinances of the City of Houston, Texas, provides that no building permit shall be issued until an affidavit containing designated language has been submitted to the building official. The affidavit states that the proposed construction, alteration or repair described in the application and the use to which the improvement will be put will not violate any deed restriction or restrictive covenants running with the land, which restriction concerns the health, safety or general welfare of the citizens of the City of Houston. The affidavit must also contain a statement that should such construction or such use be in violation of any deed restriction or restrictive covenant running with the land to which the property is subject, that the building permit shall automatically become void and have no effect, without the necessity of any action on the part of the City of Houston, Texas, or any property owner in any subdivision in which such land is located.

Section 3 of Article 974a–2, V.A.T.S., places the burden on the person desiring the building permit to ascertain whether or not there are one or more written instruments filed in the office of either the District or County Clerks which contains a restriction on the use of the property. The statute does not exempt from this requirement instruments which have been held ineffective by a court of law. On the contrary it requires that a copy of such a judgment also be filed. The copies of the instruments required to be filed must be certified copies of recorded instruments. If the applicant fails to comply with these requirements the permit issued to him is void.

There is no evidence that an instrument containing restrictions on the use of all of the lots contained in the Colonial Gardens Subdivision was filed for record by the subdivider. A map or plat of the subdivision was filed and recorded in Volume 13, p. 4 of the Map Records of Harris County, Texas. Several deeds executed by Allen C. Hutcheson conveyed lots out of that subdivision. Printed on these deeds were identical "residence building restrictions." The deeds offered into evidence state that a conveyance is made subject to the following restrictions and reservations: "Residence building restrictions: All lots except lots nos. (1), (42), (43), (44), (119), (120), (180), (181) are designated as residence lots and restricted for residence purposes only."

A deed dated October 26, 1937, by which Allen C. Hutcheson conveyed lots 211 and 212, lot no. 7, Colonial Gardens, "as shown by plat" to Austin Copeland contained these restrictions and is recorded in Volume 2694 at page 561 of the Deed Records of Harris County, Texas.

In plaintiff's original petition, which was filed on March 9, 1973, Mr. Walker alleged under oath:

Your Plaintiff would further show that property owned by him on which he is erecting commercial improvements is within a subdivision affected by changing conditions which physically alter, amend and change, modify and exempt same from the original restrictions placed upon said subdivision when platted and, therefore, falls within Article 948a subsection 7 of V.A.T.S.

In his prayer he asks that the restrictions "recorded" in Volume 2694, Page 561 of the Deed Records be set aside; that same may affect the plaintiff's property and be determined invalid and unenforceable.

In the seventh amended original petition, filed after the case was called for trial, the plaintiff alleged:

[T]he property owned by him upon which he was erecting commercial improvements was and is within a subdivision, affected by changing conditions which physically alter, amend and change, modify and exempt same from the original restrictions placed upon said subdivision when platted and, therefore, these deed restrictions were and are unenforceable and invalid.

At the trial Mr. Walker introduced into evidence a plat of the Colonial Gardens subdivision on which he had marked all lots which he contended were being used for business purposes. He prepared this exhibit within two or three weeks after the stop order was issued. He used a recorded instrument to determine the deed restrictions. The restrictions in this instrument were the same as those found in the conveyance from Hutcheson to Copeland. Mr. Walker testified that the restrictions found in this deed were the same for all the lots in the subdivision. He testified that he made a business judgment at the time he purchased the lot that the deed restrictions would be held null and void. He further testified that he knew that if he erected a building in violation of valid business restrictions there was the possibility that he might be required to tear the building down. He stated that in this case he was prepared to take the risk.

The deed conveying lots 211 and 212 to Mr. Walker recited that the conveyance was subject to the restrictions "if any" on record. The restrictions were not set out in the deed. The City did not introduce a chain of title from Allen C. Hutcheson to Mr. Walker. However, the City did prove that at the time Mr. Walker applied for a commercial building permit in the City of Houston there was on file in the District Clerk's office an instrument which contained a restriction on the use of the property described in his application. The issue is not whether the restrictions placed on the property by the instrument were valid at the time the application was made, but whether there was an instrument containing restrictions.

Both of the building permits for lots 211 and 212 obtained by Mr. Walker were obtained without full compliance with Article 974a–2, V.A.C.S., and were void.

■ Mr. Walker contends that the City does not have the power to issue "stop orders" or even to deny building permits on the basis of a determination by the City that the relevant property is subject to enforceable deed restrictions, because the statute that the City relies on for such authority, § 974a–2, Tex.Rev.Civ.Stat., violates the Texas Constitution by purporting to confer judicial powers on executive officials in violation of Article 2, § 1 of the Constitution of the State of Texas.

This act provides that the department shall issue a permit for construction which conforms with all restrictions relating to the use of the property described in the application. The implication is that should the application be for construction or repair which does not conform with the restrictions relating to the use of the property the City would be authorized by the act to deny the application. The act provides that an administrative refusal to issue a commercial permit on the grounds of violation of restrictions contained in a deed or other instrument shall be reviewable by a court of appropriate jurisdiction. Rather than conferring judicial powers on executive officials, this act specifically denies the City officials the right to determine whether or not deed restrictions are enforceable. They must assume that they are enforceable until they are supplied with a court judgment to the contrary.

The evidence establishes that the agency of the City of Houston which has the authority and responsibility for issuing commercial building permits was never furnished a certified copy of the instrument which contained the restrictions on the use of the property owned by Mr. Walker. The two permits which were issued on the basis of the information furnished to the department were void. The department properly notified Mr. Walker that the permits were no longer considered good by the department.

Mr. Walker should not be heard to complain of the issuance of the stop order by the City officials. On receipt of this order Mr. Walker stopped further building and within a few weeks instituted this suit which then had as its purpose a determination of whether or not the restrictions were valid. Mr. Walker was charged with notice of the statute authorizing the City to deny a commercial building permit in an area restricted to residential uses. At the time

he purchased this property he was charged with notice of the fact that he was required to file certified copies of all instruments containing a restriction on the use of the property and that unless he complied with the act any permit which he received would be void.

■ It cannot be seriously contended at this late date that covenants restricting the use of a tract of land for the benefit of another tract owned by the same person are illegal or unenforceable in the courts. Article 974a–1, V.A.T.S., merely authorizes incorporated cities, towns or villages to assist in the enforcement of these restrictive covenants. The act is a regulation of the right to build commercial buildings on city property. The burden placed on the property by the act did not cause a disproportionate diminution in economic value and certainly not a total destruction of the value. In enacting this law the State was acting as a neutral governmental arbitrator to resolve conflicts between its citizens. It provides a method for the orderly settlement of potential disputes between its citizens by court action. It constitutes a valid exercise of governmental power. *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978).

■ The determination of whether or not restrictive covenants on the use of land are valid and enforceable is a proper subject for judicial action. *City of Houston v. Emmanuel United Pentecostal Church, Inc.*, 433 S.W.2d 680 (Tex.1968). The statute is not void as being violative of § 1, Art. 2 of the Constitution of the State of Texas providing for the division of the power of government into three departments: Legislative, Executive, and Judicial. *Gulf Refining Co. v. City of Dallas*, 10 S.W.2d 151 (Tex.Civ. App.-Dallas,1928, writ dism'd). The statute is not unconstitutional as authorizing the taking, damaging, and destroying of property without due process or as denying equal protection of the law. *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475 (1934).

An applicant for a commercial building permit in the City of Houston is under the burden of showing that there are no restrictions on the property prohibiting a commercial use. Section 10–3, Article 1, Chapter 10, Code of Ordinances of the City of Houston, Texas provides:

No building permit shall be issued until an affidavit has been submitted to the building official stating that construction, alteration or repair for which the building permit is sought, and the use to which the improvement is to be put will not violate any deed restrictions or restrictive covenants running with the land to which the property may be subject. . . .

The ordinance does not authorize the building official to make a determination as to whether deed restrictions or restrictive covenants running with the land are valid. We are cited to no ordinance authorizing an administrative decision as to the validity of a restriction on the use of property. The ordinance contemplates that the validity of use restrictions on property be determined by court action. The City ordinances are not invalid as denying procedural due process or authorizing an arbitrary and capricious use of power. Neither does the ordinance provide a method for depriving a property owner of his property without due process of law.

■ This case was submitted to a jury on special issues. In answer to special issue no. 1 the jury found that the "residence purposes only" deed restrictions as to the Colonial Gardens Subdivision was not enforceable in January of 1973 and in April of 1978. The evidence shows that stop work orders were issued during those months. In answer to special issue no. 2 the jury found that the issuance of the stop work orders was arbitrary and capricious. The jury further found that the issuance of the stop work orders was the proximate cause of damage to Mr. Walker and found the amount of the damage. The jury found that two members of the City Legal Department acted willfully, intentionally and maliciously in issuing the stop orders, and awarded Mr. Walker exemplary damages.

It appears that the judgment rests on the finding that the deed restrictions were unenforceable, and thus, the issuance of the

stop work order was arbitrary and capricious. In effect this places the burden on the City of making an administrative decision as to the validity of the deed restrictions. In entering a judgment based on these special issues the court failed to give effect to the provision of Article 974a–2, V.A.T.S., declaring void a commercial permit obtained without full compliance with the act. The issuance of a stop work order to one proceeding with construction under a void permit is not an arbitrary and capricious action. The plaintiff did not allege a cause of action based upon any fault on the part of the City of Houston in failing or refusing to issue to him a commercial building permit. No issues were requested or submitted on such a cause of action.

The plaintiff alleged in general terms a cause of action under Title 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Mr. Walker has no right or privilege protected by the Constitution of the United States to proceed under a commercial building permit declared void by a valid law of the State of Texas for failure to furnish required information to the agency authorized to issue the permit.

■ In order to prevail against a political subdivision on a § 1983 cause of action the plaintiff must prove that the action complained of must constitute a custom or policy of the local government which violated a constitutional right enjoyed by the plaintiff. Issues were not submitted to establish that the City officials alleged to have issued the stop orders were authorized to do by written law or by custom or usage.

■ A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. In enacting § 1983 Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. A city may not be held liable solely because an employee commits an actionable tort. It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980).

While it is not entirely clear there is support in the record for a finding that the "stop work" order was issued by the public works department at the suggestion of an Assistant City Attorney. There is no evidence to support a finding that the lawyers in the City Attorney's office had authority to make policy or that similar action was so widespread as to establish custom.

Under the facts of this case, the issuance of the stop orders did not amount to a compensable taking under Article 1, § 17 of the Texas Constitution, as interpreted in *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978). The plaintiff's cause of action was not based upon an arbitrary refusal to issue a building permit. In addition the evidence shows that he failed to submit a proper application for such building permit.

Building permits obtained by plaintiff Walker were void upon issuance due to his failure to comply with Article 974a–2, V.A. T.S., hence, the City, as a matter of law, cannot be liable in damages for stopping work which was proceeding under a void permit. The City's points of error 1 through 4 are sustained. The judgment of the trial court is reversed and judgment is here rendered that the plaintiff take nothing.